## First National Bank of Louisville v. Bickel, et al.

### (Decided May 22, 1913.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Contracts—Construction of.—A contract obligating the signers to "guarantee an overdraft to the First National Bank to the extent of $4,500; all the receipts of the White City Co. to be deposited in the bank until the above is extinguished," was not a continuing guaranty but a guaranty of an existing overdraft.

2. Contracts—Extrinsic Evidence to Show Meaning of.—Where a written contract is not open to two or more constructions, the rights and liabilities of the parties under it are to be determined by the paper alone, and its meaning cannot be extended or modified by extrinsic evidence.

3. Banks—Rights and Liabilities of Officers of a Bank Who Sign a Guaranty to it.—The liability of bank officers who sign a paper guaranteeing to it the payment of a note, is not increased by their relation with the bank. They are to be treated as other customers dealing with the bank.

HELM BRUCE, BRUCE & BULLITT for appellant.

B. F. WASHER, W. PRATT DALE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On July 6, 1908, the appellee, C. C. Bickel, and the other appellees, all of whom were at that time financially interested in a corporation known as the White City Company executed and delivered to the appellant bank the following writing:

"We, the undersigned, hereby guarantee an overdraft to the First National Bank of Louisville, Ky., to the extent of $4,500; all the receipts of the Park (White City Company) to be deposited in said bank until the above is extinguished. It is also understood and agreed that chairs located in the theatre, bought from the Ross Chair

Company, to the value of $1,500, are hereby assigned to us as security by the directors of the White City Company.''

Some months after this the White City Company made an assignment owing an overdraft to the bank of more than six thousand dollars, but between July 6, 1908 and the date of the assignment the receipts of the White City Company deposited in the bank amounted to largely more than $4,500.

Afterwards, this suit was brought by the bank against the signers of the guaranty to recover from them $4,500, the amount mentioned in the guaranty. A general demurrer filed to the petition as amended was sustanied, and, the bank declining to plead further, its petition was dismissed.

The suit was predicated upon the theory that the paper was a continuing guaranty of an overdraft to the extent of $4,500, and therefore as the account of the White City Company was continually overdrawn from the date of the execution of this guaranty to the time it became bankrupt, on which date the overdraft amounted to more than six thousand dollars, the guarantors were bound on the guaranty to the extent of $4,500. On the other hand, the position of the guarantors is that they only guaranteed an overdraft existing at the time the guaranty was executed to the extent of $4,500, coupled with an agreement on the part of the bank to apply the receipts of the company thereafter deposited in the bank to the extinguishment of the then existing overdraft, and as subsequent to July 6, 1908, the receipts of the White City Company deposited in the bank amounted to more than $4,500, the guaranty was satisfied and the guarantors released from liability.

As the guaranty does not seem fairly open to two constructions, the solution of the question at issue between the parties must turn on the proper construction of the guaranty as it is written, without the aid of extrinsic evidence, and, looking to the paper alone, we think the guarantors only guaranteed the payment of an existing overdraft and that the obligation on their part was not a continuing guaranty. The words of the guaranty exclude the construction that it was intended to be a continuing guaranty. The stipulation, that the receipts of the Park (White City Company) were to be deposited in the bank to satisfy the overdraft guaranteed, plainly shows that the parties had in contemplation an overdraft then exist-

ing to the payment of which the bank agreed. to apply deposits until it was satisfied.

If, as insisted by counsel for the bank, this paper was a continuing guaranty and not a guaranty of an existing overdraft, it is difficult to understand the reason for inserting in the paper the stipulation that the receipts of the White City Company should be applied to the payment of the overdraft until it was extinguished. In our opinion, to construe this paper as a continuing guaranty would do violence to the expressed intention of the parties and result in ignoring the condition obligating the bank to apply the receipts in a specified way.

It is, however, argued in behalf of the bank that the condition of the bank account of the White City Company on July 6 shows that the guaranty was intended to be a continuing one and did not have reference to an existing overdraft of $4,500. Waiving the question as to the competency of the account as an aid in the construction of a paper that on its face seems free from ambiguity, we do not think the condition of the account sustains the conclusion reached by counsel. The account shows that on July 2nd, the overdraft was $5,044.77, and that on July 3d, the overdraft was $4,623.08, and that on July 4th and 5th it was $5,081.64. It further shows that on July 6th there was deposited $3,182.30, leaving an overdraft at the close of business on July 6th of $1,899.34, and the argument is made that when this guaranty was executed the overdraft only amounted to $1,899.34, and therefore the reference in the guaranty to an overdraft of $4,500 could not refer to an existing overdraft, as there was no existing overdraft in that amount. Whether there was an overdraft of $4,500 when this guaranty was executed, depends on the time of day on July 6 that it was executed, because in the morning of that day, and at all times on that day before the deposit of $3,182.30 was made, there was an overdraft of more than $4,500, and it is reasonable to assume that this paper was executed before this deposit was made.

It is further suggested by counsel that if the paper was executed before the deposit had reduced the overdraft, it is singular that the paper, which was intended to only guarantee an existing overdraft, did not specify the amount of the overdraft then existing, which was $5,081.64, instead of specifying $4,500. The record does not show, and we have no means of knowing what influenced the guarantors to fix the amount for which they

were willing to become liable at $4,500, but whatever the reason was, they had the right to insert any sum they pleased, and the motives that influenced them to specify $4,500 are not the subject of pertinent inquiry.

In reference to the assertion of counsel for the bank that the signers of the guaranty who were also officers of the bank are estopped from denying that this was a continuing guaranty, it seems sufficient to say that as there is no claim of fraud or mistake in the execution of the paper, its terms and conditions cannot be extended or modified by a construction that would give it a meaning that the language employed is not fairly susceptible of. Aside from this, we are unable to perceive how the fact that some of the signers of the guaranty were officers of the bank could have the effect of estopping them from denying that the paper upon which it is sought to hold them liable, was not a continuing guaranty. In signing the paper they were not acting as officers of the bank but were dealing with it as customers, and the relation they held with the bank does not in any manner affect their rights as signers of this paper.

The judgment is affirmed.